UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

Kirk Waters, *et al.*,

        Plaintiffs,                      Case No. 3:19-cv-372

v.                                               Judge Thomas M. Rose

Pizza to You, LLC, *et al.*,

        Defendants.

---

**ENTRY AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS. ECF 34.**

---

This matter is before the Court on Plaintiffs' Motion to Certify Class. ECF 34. While the instant case is brought under the Fair Labor Standards Act, and eligible for consideration to be certified under the presumptive standard of that act, leading to an opt-in plaintiff class, Plaintiffs seek certification under Federal Rule of Civil Procedure 23, which would create an opt-out class. Because Rule 23 certification is warranted, the motion will be granted.

On March 9, 2020, the Court granted Plaintiff's Motion for Conditional Certification of an FLSA Collective Action. Doc. 20. Approximately 47 delivery drivers have joined the suit by filing consent to join forms under 29 U.S.C. 216(b). See, e.g., ECF 21-31. Plaintiff now moves to represent a class of at least 160 delivery drivers who work for their five Jets Pizza stores in the Dayton, Ohio area.  Plaintiff Kirk Waters moves this Court pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, for an Order certifying this action as a class action, and designating Plaintiff as the representative of the following class:

> All non-owner, non-employer delivery drivers who worked at any of the Jets Pizza locations owned/operated by Pizza to You, L.L.C., Pizza to You 2, L.L.C., Pizza to You 3, L.L.C., Pizza to You 4, LLC, Pizza to You 5, LLC, PRM Management LLC, Peter Marrocco, and/or Rosemary Marrocco in Ohio at any time from November 22, 2016 to present.

In connection with this certification, Plaintiff moves this Court to affirm his selection of counsel by appointing Biller & Kimble, LLC as Class Counsel pursuant to Rule 23(g). Plaintiff also asks that he be permitted to send notice of this lawsuit to putative class members pursuant to Rule 23(c)(2).

**Background**

Plaintiff Kirk Waters worked for Defendants at one of their five Jets Pizza locations in the Dayton, Ohio area. Plaintiff alleges that Defendants' Jets stores employ delivery drivers according to the same basic compensation terms, and that those compensation terms result in a violation of Ohio wage and hour law and unjustly enrich Defendants.

Defendants require their delivery drivers to provide automobiles to use to deliver Defendants' pizzas. Defendants do not track or keep records of the delivery drivers' actual or estimated vehicle expenses. Defendants reimburse their delivery drivers for their vehicles' expenses at a set per-delivery rate ($1.00 per delivery until July 2019, and $1.25 per delivery since then). Defendants pay each of their delivery drivers an hourly wage rate at or close to minimum wage.

Defendants employed Kirk Waters as a pizza delivery driver at their Jets Pizza location in Springboro, Ohio from approximately September 2019 to February 2020. He filed this action on November 22, 2019. See ECF 1.

Plaintiff moves to represent a class of at least 160 delivery drivers who work for their five

2

Jets Pizza stores in the Dayton, Ohio area.

| Store Location | Operating Entity | Referred to herein as: |
|---|---|---|
| 5843 Far Hills<br>Dayton, Ohio 45459 | Pizza to You, L.L.C. | Far Hills |
| 2418 Esquire Drive<br>Beavercreek, Ohio 45431 | Pizza to You 2, L.L.C. | Beavercreek |
| 228 W. Central Ave.<br>Springboro, Ohio 45066 | Pizza to You 3, L.L.C. | Springboro |
| 6241 Old Troy Pike<br>Huber Heights, Ohio 45424 | Pizza to You 4, LLC | Huber Heights |
| 3979 Indian Ripple Rd.<br>Beavercreek, Ohio 45440 | Pizza to You 5, LLC | Indian Ripple |

Exhibit ("Ex.") 1, Responses to Interrogatories by Pizza to You, L.L.C., Pizza to You 2, L.L.C., Pizza to You 3, L.L.C., Pizza to You 4, LLC, Pizza to You 5, LLC, and PRM Management LLC ("Defendants' Interrogatory Responses"), Response to Interrogatory No. 1.

The delivery drivers who work for Defendants' Jets Pizza restaurants are all subject to the same basic terms of employment throughout the relevant time period, i.e., from November 22, 2019 to present. First, all of the delivery drivers have been required to provide a car to use to deliver pizzas for Defendants. Ex. 2, Transcript from the Rule 30(b)(6) Deposition of Entity Defendants ("Pizza to You Dep.") at pp. 52:25-53:2; Ex. 3, Declaration of Kirk Waters ("Waters Decl."), ¶ 11; Ex. 4, Declaration of Brian Lorenz ("Lorenz Decl."), ¶ 12; Ex. 5, Declaration of Sam Miller ("Miller Decl."), ¶ 11; Ex. 6, Declaration of Alec Minge ("Minge Decl."), ¶ 11.

Second, Defendants do not keep records of the delivery drivers' vehicle-related expenses. Ex. 1, Defendants' Interrogatory Responses, Response to Interrogatory No. 5; Ex. 2, Pizza to You Dep. at p. 53:3-6; Ex. 3, Waters Decl., ¶ 12; Ex. 4, Lorenz Decl., ¶ 13; Ex. 5, Miller Decl., ¶ 12; Ex. 6, Minge Decl., ¶ 12. Third, Defendants' delivery drivers all received $1.00 per delivery as

3

expense reimbursement from the beginning of the relevant time period until July 29, 2019. On July 29, 2019, Defendants increased the per-delivery reimbursement payment for all drivers at all stores to $1.25 per delivery. Ex. 1, Defendants' Interrogatory Responses, Response to Interrogatory No. 4; Ex. 2, Pizza to You Dep. at p. 54: 3-14; Ex. 3, Waters Decl., ¶¶ 15-16; Ex. 4, Lorenz Decl, ¶¶ 16- 17; Ex. 5, Miller Decl., ¶¶ 15-16; Ex. 6, Minge Decl., ¶¶ 15-16.

The delivery drivers estimate they drove, on average, between 6.5 and 10 miles per delivery, so these reimbursement payments were insufficient to cover the delivery drivers' expenses. Ex. 3, Waters Decl., ¶ 17; Ex. 4, Lorenz Decl, ¶ 18; Ex. 5, Miller Decl., ¶ 17; and Ex. 6, Minge Decl., ¶ 17. Defendants' reimbursement rate and policy applies to each of their delivery drivers in the same way. Ex. 1, Defendants' Interrogatory Responses, Response to Interrogatory No. 4; Ex. 2, Pizza to You Dep. at p. 54:3-59:19; Exs. 3-6 (explaining $1.00 or $1.25 per delivery reimbursement payments).

Defendants concede that, in setting their reimbursement policy, they did not consult with anyone regarding what an appropriate reimbursement rate would be, but chose $1.00 per delivery because that was the way other Jets Pizza franchise operators were reimbursing their delivery drivers. Ex. 2, Pizza to You Dep. at 54:15-55:2. Defendants also concede that they do not consider whether a delivery driver's car is old or new (p. 59:10-15), do not consider whether a delivery driver's car gets good or bad gas mileage (p. 59:16-19), and do not even collect the number of miles driven by delivery drivers (p. 56:6-8). Id.

Finally, unless they have received a pay raise due to their length of employment, the delivery drivers have been paid minimum wage for the hours they worked as delivery drivers. Ex. 2, Pizza to You Dep. at p. 37: 19-38: 2; Ex. 3, Waters Decl. ¶ 5 (paid tipped wage rate of $6.75

per hour); Ex. 4, Lorenz Decl., ¶ 6 (paid tipped wage rate of $6.25 per hour); Ex. 5, Miller Decl., ¶ 5 (paid tipped wage rate of $6.70 per hour); Ex. 6, Minge Decl., ¶ 5 (paid tipped wage rate of $6.70, then received raise to $7.75) . As such, any under-reimbursed expense results in a minimum wage violation.

Defendants applied these policies to all delivery drivers at all of their Jets Pizza locations in Ohio.

**Analysis**

Ohio law requires employers to pay their employees minimum wage for all hours worked. See Oh. Const., Art. II, § 34a. Ohio's minimum wage is currently $8.70 per hour, and $4.35 per hour for tipped employees. See Ohio Const., Art. II, §34a. Ohio law also requires that all employees be paid "the wages earned by them." See O.R.C. § 4113.15(A); see also *Craig v. Bridges Bros.*, 823 F.3d 382, fn. 1 (6th Cir. 2016).

Under the FLSA and Ohio law, wage requirements become meaningless if employers can force employees to "kick back" money to the employer. Put simply, an employer cannot tell an employee, "I will pay you minimum wage if you give me $2 per hour." Thus, minimum wages and overtime wages must be paid to employees "free and clear," i.e., without a "kickback" or deduction made for the employers' benefit. As the Code of Federal Regulations explains:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the

> performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 C.F.R. § 531.35. This Court has previously recognized that pizza delivery drivers' vehicle expenses are "tools of the trade." "In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered." *Hatmaker v. PJ Ohio*, LLC, No. 3:17-cv-146, 2019 WL 5725043, at *3 (S.D. Ohio Nov. 5, 2019); see also, e.g., *Benton v. Deli Management, Inc.*, 396 F. Supp. 3d 1261, 1269-74 (N.D. Ga. Aug. 8, 2019) ("[Employer's] need for a vehicle is directly incidental to its business."); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. Oct. 21, 2008) ("there is substantial legal authority for the proposition that mechanisms for transportation— typically motor vehicles—can be tools of the trade."); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 729-30 (E.D. Mo. July 8, 2015) (denying summary judgment that fixed costs could be excluded from "tools of the trade").

However, neither the FLSA nor its regulations clearly state how much an employer must reimburse when one of their employees uses his or her car for business purposes. "29 C.F.R. § 531.35 does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. Thus, there is ambiguity as to how to calculate the mileage rate." *Hatmaker*, 2019 WL 5725043, *4.

When a statute or regulation is genuinely ambiguous as applied to a particular factual situation, the Supreme Court instructs courts to defer to an agency's reasonable interpretation.

6

*Kisor v. Wilkie*, 139 S. Ct. 2400, 2410, 204 L. Ed. 2d 841 (2019) ("Congress…routinely delegates to agencies the power to implement statutes by issuing rules. …[W]hen granting rulemaking power to agencies, Congress usually intends to give them, too, considerable latitude to interpret the ambiguous rules they issue."). Thus, this Court previously adopted the standard in the Department of Labor Field Operations Handbook, requiring that employers either (1) track and reimburse for the drivers' actual expenses, or (2) reimburse at the applicable IRS standard business mileage rate. *Hatmaker*, 2019 WL 5725043, at *6 (granting delivery drivers' motion for summary judgment). "Because the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. 531.35, and required by [Defendants] as a condition of being hired as a delivery driver, there need[s] to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid." *Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (granting Rule 23 class certification); see also *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, *1 (Nov. 25, 2019) (Rice, J.) (granting final approval of Rule 23 settlement and adopting DOL Handbook standard). Specifically, the DOL Handbook's rule is:

> **30c15 Car expenses: employee's use of personal car on employer's business.** In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration

7

> fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rate basis.

See DOL Handbook § 30c15(a). The DOL Handbook standard makes sense because "employers are not permitted to 'guess' or 'approximate' a minimum wage employee's expenses for purposes of reimbursing the expenses. This would result in some employees receiving less than minimum wage, contrary to the FLSA mandate. Instead, as a general proposition, the FLSA requires employers to pay back the actual expenses incurred by the employees." *Hatmaker*, 2019 WL 5725043, *3. But, "[i]n the pizza delivery driver context, … determining and maintaining records of each employee's actual expenses is a cumbersome task for the employer." Id. As a result, the Handbook standard "giv[es] employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." Id. The DOL Handbook standard applies:

> The Department's approach to mileage is consistent with the FLSA's remedial goals. The FLSA is a remedial statute that is designed to "protect all covered workers from substandard wages and oppressive working hours." *Encino Motorcars, LLC v Navarro*, 579 U.S. ——, 136 S. Ct. 2117, 2121 (2016) (quoting *Barrentine v. Arkansas– Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437 (1981)). To meet that goal, both employees and employers must have clear rules to follow. The Fair Labor Standards Act's remedial goals are defeated if employees have no way of knowing whether they are being paid properly. See, e.g., 29 U.S.C. 203(m) (requiring tipped employees to receive notice of the FLSA's tip credit provisions). This is likely one of the reasons the DOL implemented a very clear standard for pizza delivery drivers—the public and accessible IRS rate.
>
> The Department's rule for pizza delivery drivers results in clarity for both delivery drivers and their employers. Employers can choose to take on the task of tracking delivery drivers' actual expenses or pay a set per-mile reimbursement rate. A neutral arbiter—the IRS— creates, monitors, and updates the rate, and it favors neither

8

>employers nor employees. Both employers and employees can readily access the rate. Moreover, employers, employees, and courts can precisely determine whether an employer is complying with the employer's minimum wage obligations. This can be done at relatively low litigation cost, likely through a motion for judgment on the pleadings or at summary judgment.

*Hatmaker*, 2019 WL 5725043, *6. "As a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses, or (2) pay the mileage rate set by the Internal Revenue Service." Id. at *7

Defendants assert that a Rule 23 class action and an FLSA collective action cannot exist within the same case. ECF 44, PageID 507, 512–13. Courts have repeatedly rejected this argument. "[T]here is no inherent incompatibility between an opt-in FLSA collective action and an opt-out Rule 23 class action." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (Black, J.). Not only are the two mechanisms compatible, "all circuit courts to consider the issue have held that the different opting mechanisms do not require dismissal of the state law claims." *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 528 (9th Cir. 2013), rev'd on other grounds, 135 S. Ct. 513 (2014). "It is well-settled that employees in Ohio can maintain a Rule 23 class relating to their Ohio claims while simultaneously representing a 29 U.S.C. § 216(b) collective action relating to their FLSA claims." *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 264 (S.D. Ohio 2017) (Smith, J.), quoting *Dillow v. Home Care Network, Inc.*, 2017 U.S. Dist. LEXIS 85788, at *5 (S.D. Ohio June 5, 2017) (Black, J.).

Discovery has shown that Defendants used the same reimbursement policy for all of their delivery drivers. First, the drivers all provided their own cars to use at work. Ex. 2, Pizza to You Dep. at pp. 52:25-53:2. Second, Defendants did not track and reimburse for actual expenses. Ex. 1, Defendants' Interrogatory Responses, Response to Interrogatory No. 5; Ex. 2, Pizza to You Dep.

9

at p. 53:3-6. Instead, Defendants created a flat, per-delivery reimbursement policy that reimbursed each driver the same amount for each delivery they completed. Ex. 1, Defendants' Interrogatory Responses, Response to Interrogatory No. 4; Ex. 2, Pizza to You Dep. at p. 54: 3-14. Finally, the delivery drivers are paid minimum wage, so any amount of under-reimbursement will trigger a minimum wage violation. Ex. 2, Pizza to You Dep. at p. 37: 19-38: 2. The only remaining question is whether Defendants' reimbursement payments resulted in the delivery drivers receiving more than the IRS standard business mileage rate for each mile driven. According to Plaintiffs, Defendants' reimbursement payments have fallen short. See Ex. 3-6, Declarations of Opt-In Plaintiffs.

Defendants were not required to reimburse according to the DOL Handbook, but were instead permitted to "reasonably approximate" the delivery drivers' vehicle expenses. But, even in cases where courts utilized the "reasonable approximation" standard, the courts still granted Rule 23 class certification. See, e.g., *Perrin*, 2013 WL 6885334, *4; *McFarlin*, 2017 WL 4416451 (E.D. Mich. Oct. 5, 2017); *Bass*, 2011 WL 2149602; *Oregel*, 2014 WL 10585672. As such, even if a reasonable approximation standard applied, Rule 23 class certification is still appropriate.

Ohio's Prompt Pay Act allows workers to recover wages paid late for any reason. That includes wages not paid as a result of a violation of any other law, including the FLSA or Ohio's wage laws. *Craig*, 823 F.3d at 385, n.2 (the Prompt Pay Act "rises and falls" with underlying FLSA and Ohio wage and hour claims); see also, e.g., *Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, at *6 (S.D. Ohio Sept. 29, 2019) (holding that FLSA violations "automatically give rise to violations under Ohio's Prompt Pay Act, codified at Ohio Rev. Code § 4113.15."). Thus, any violation of an underlying wage and hour law, including the FLSA, warrants

10

class certification under O.R.C. § 4113.15, assuming Rule 23's requirements are met.

Plaintiff claims under Ohio Rev. Code § 2307.60 that the delivery drivers are entitled to compensatory and punitive damages as a result of Defendants' criminal act of willfully violating the Fair Labor Standards Act. Doc. 1, ¶¶ 224-28. The FLSA carries criminal penalties for willful violations. 29 U.S.C. § 216(a). The Ohio Revised Code provides compensatory and punitive damages for those injured by another party's criminal act. O.R.C. § 2307.60(A)(1); see also *Buddenberg v. Weisdack*, 2020-Ohio-3832 (Ohio 2020) (holding that claim under § 2307.60 requires a criminal act, not a criminal conviction). Because Defendants' compensation and reimbursement policies apply to all of the delivery drivers in the same way, the question of whether Defendants' FLSA violations were "willful" will be answered in the same way as to all of the delivery drivers.

Finally, Plaintiff claims that Defendants have been unjustly enriched by their delivery drivers. To prevail on this claim, Plaintiff must show (1) a benefit conferred by the delivery drivers upon Defendants; (2) knowledge by the Defendants of the benefit; and (3) retention of the benefit by the Defendant under circumstances where it would be unjust to do so without payment. *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2020 WL 5760445, at *2 (S.D. Ohio Sept. 28, 2020). Defendants required delivery drivers to provide their cars for work, rather than renting or buying a fleet of cars themselves. Ex. 2, Pizza to You Dep., pp. 57:11-58:15 (acknowledging that they did not consider renting or buying their own fleet of cars). By doing so, Plaintiff claims that the delivery drivers "conferred a benefit on Defendants when using their own vehicles with no or little compensation," in the form of, for example, decreased costs and increased profits. *Clark*, 2020 WL 5760445, at *3. Plaintiff claims that Defendants were aware of these benefits, and that it is

unjust for Defendants to retain these benefits. Like the Ohio Rev. Code § 2307.60 claim, Plaintiff's unjust enrichment claim will be resolved the same way for all of the delivery drivers.

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Plaintiff asks the Court to certify the following class:

> All non-owner, non-employer delivery drivers who worked at any of the Jets Pizza locations owned/operated by Pizza to You, L.L.C., Pizza to You 2, L.L.C., Pizza to You 3, L.L.C., Pizza to You 4, LLC, Pizza to You 5, LLC, PRM Management LLC, Peter Marrocco, and/or Rosemary Marrocco in Ohio at any time from November 22, 2016 to present.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio law does not contain such a requirement. See Ohio Const. Art. II, Sec. 34a. Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. See, e.g., *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489-90 (S.D. Ohio Sept. 4, 2014) (Marbley, J.) (certifying a class for Ohio minimum wage claims). Rule 23 class certification has been granted in similar cases filed by food delivery drivers. See *Brandenburg*, 2018 WL 5800594; *McFarlin*, 2017 WL 4416451; *Bass*, 2011 WL 2149602; *Perrin*, 2013 WL 6885334; *Oregel*, 2014 WL 10585672.

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the

12

representative parties must "fairly and adequately protect the interests of the class."

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012). Here, according to the class list provided by Defendants for purposes of sending FLSA collective action notice, at least 160 delivery drivers were employed at the Defendants' Jets Pizza stores during the relevant time period. This meets the numerosity requirement.

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, citing *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. Id.; see also *Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

In this case, the legal theories and relevant facts are common to the class because the class

13

consists of workers that were allegedly harmed in the same way. With respect to all of their delivery drivers, Defendants (1) required the delivery drivers to provide cars to complete their job duties; (2) did not keep track of or reimburse for the delivery drivers' actual expenses; (3) did not reimburse the delivery drivers at the IRS standard business mileage rate; and (4) paid an hourly wage rate at or close to minimum wage. *Brandenburg*, 2018 WL 5800594, *4; Exs. 1-7.

While the extent of Defendants' under-reimbursement might be different from driver to driver or location to location the need for individualized inquiry and calculation of damages alone is not enough to defeat commonality. See, e.g., *Brandenburg*, 2018 WL 5800594, *4; *McFarlin*, 2017 WL 4416451, *3 ("[T]he fact that there will need to be individualized inquiry in this case as to the amount of damages for each delivery driver is not enough to invalidate commonality."); *Perrin*, 2013 WL 6885334, *5 ("The issues facing the class arise from common questions involving Defendants' policies regarding the calculation and payment of reimbursement for delivery expenses. This is sufficient to satisfy the commonality requirement.").

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, citing *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D.Ill.1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Id., citing *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996); *Bass*, 2011 WL 2149602, *3. The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class.

14

Id., citing *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 491 (S.D.Ill.1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640-41 (S.D. Ohio June 19, 2008). Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." Id. at 641.

Plaintiff is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same reimbursement rates applied to all class members. Ex. 2, Pizza to You Dep., p. 55: 5-7 (Q. And every single delivery driver is reimbursed that way, correct? A. Yes.").

Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so goes the claims of the class." Id. at 640. If Defendants' wage and hour practices violate Ohio law as to Plaintiff, they violate Ohio law as to the putative class members; and, accordingly, the typicality requirement is met here. See *McFarlin*, 2017 WL 4416451, *4 ("The Court finds

15

that typicality is met in this case because Mr. McFarlin is alleging underpayment of wages by Defendants, similar to all of the other potential class members."); *Oregel*, 2014 WL 10585672, *1 ("Plaintiff has demonstrated that he performed the same job duties as members of the putative class, was subject to the same lump sum delivery reimbursement policy, and has the same claims. Plaintiff's claims are typical of those of the class."); *Brandenburg*, 2018 WL 5800594, *4 ("the typicality requirement is also met in this case since the interests of Brandenburg will be aligned with those of all the delivery drivers and, in pursuing his own claims, 'the named plaintiff will also advance the interests of the class members.'").

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. See, e.g., *Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests. With respect to the second inquiry, the proposed class representative asserts he is ready, willing, and able to fulfill his duties and has done so to date. Likewise, Plaintiff's counsel is qualified to handle this matter. Plaintiff's counsel has established an expertise in wage and hour cases in general, and in pizza delivery driver wage and

hour cases in particular. *Brandenburg*, 2019 WL 6310376, \*6 (finding counsel's work in pizza delivery driver cases to be "exemplary"); *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, \*5 (S.D. Ohio Jan. 18, 2019) (finding that Plaintiff's counsel has "established an expertise in 'pizza delivery driver' litigation"). Plaintiff's counsel has committed, and asserts it will continue to commit, the resources necessary to representing the putative class in this case.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. Both of Rule 23(b)(3)'s requirements are met in this case.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct making this an appropriate case for resolution by means of a class action. Most notably, Defendants subjected all of their delivery drivers to the same reimbursement rate. Liability turns on what the proper reimbursement rate is for pizza delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. See, e.g., *Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class

17

certification.

The adequacy of Defendants' reimbursement policy will predominate in this case:

> [T]he general issue of the adequacy of the reimbursement policy/policies maintained by Defendants predominate over individual inquiries. Although the damages for each delivery driver will be an individual determination, the damages arise from a course of conduct that is applicable to the entire class: Defendants' payroll practices. Therefore, the predominance requirement is met.

*McFarlin*, 2017 WL 4416451, *4; *Oregel*, 2014 WL 10585672, *2 ("The fact that putative class members' automobile expenses vary is not relevant to the questions pertaining to defendant's liability.").

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

There is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. See, e.g., *Tedrow v. Cowles*, No. 2:06-cv-637, 2007 WL 2688276, *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers.").

Moreover, efficiency weighs in favor of concentrating the claims in this Court, as there is

no record of other, similar litigation pending in Ohio, and all of Defendants' stores are located in the Dayton area. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Tedrow*, 2007 WL 2688276, *8 (internal citations omitted); *Brandenburg*, 2018 WL 5800594, *5 ("there are no likely difficulties in managing a class action."). Adjudicating this matter as a class action is the most efficient manner of resolving these claims.

Plaintiff's proposed notice complies with all of the requirements of Rule 23(c)(2). See Ex. 7, Proposed Notice. Plaintiff asks that the Court grant Plaintiff's request to send the notice to all delivery drivers by mail and email. For individuals for whom mail or email gets returned as undeliverable, Plaintiff proposes that he run the class members' name through a change of address database and re-send the notice to any new address identified.

**Conclusion**

Because Plaintiff meets the standards for Rule 23 certification, the Court (1) **CERTIFIES** this action as a class action under Rule 23 with regard to claims 2, 3, 4, and 5, (2) **APPOINTS** plaintiff Kirk Waters as class representative, (3) **APPOINTS** counsel Biller & Kimble, LLC as lead counsel, and (4) **APPROVES** Plaintiff's proposed notice to be delivered to class members by mail and email.

Plaintiffs' Motion to Certify Class, ECF 34, is **GRANTED**.

19

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, January 22, 2021.

                                                        s/Thomas M. Rose
                                     _____
                                              THOMAS M. ROSE
                                UNITED STATES DISTRICT JUDGE