## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**Kirk Waters,**

        *on behalf of himself and those*
        *similarly situated,*

                *Plaintiffs,*

**v.**
                                        **Case No. 3:19-cv-372**
                                        **Judge Thomas M. Rose**

**Pizza to You, LLC, et al.,**

                *Defendants.*

---

### ENTRY AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT. ECF 37. THE PARTIES ARE ORDERED TO SUBMIT AN AMENDED RULE 26(F) REPORT BY MAY 21, 2021.

---

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment. ECF 37. The motion asks the Court to define the law that will govern the determination of whether Defendants are liable on Plaintiffs' federal and state minimum wage claims.

## I.    Background

This case challenges Defendants' alleged practice of under-reimbursing pizza delivery drivers for their vehicle-related expenses. Plaintiff and his fellow delivery drivers provided vehicles for Defendants' benefit, using their own cars to deliver pizzas. See ECF 37-2, Transcript from the Rule 30(b)(6) Deposition of Entity Defendants at 54:25–55:2. During most of the relevant time period, Defendants reimbursed the drivers $1.00 per delivery. Dep. at 50:17–24. In 2019, Defendants raised the reimbursement to $1.25 per delivery. Id. at 54:3–14. The delivery

radius averaged three miles. Id. at 53:14–22. Thus, drivers were reimbursed an average of less than the IRS mileage rate applicable during the relevant time period of $0.54. Defendants did not reimburse Plaintiff's actual vehicle expenses. Id. at 59:2–19; Def. Interrogatory Answer 5. Instead, Defendants picked $1.00/delivery as a reimbursement rate because other pizza companies used that rate. Dep. at 55:15–56:7.

## II.    Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    Analysis

The FLSA mandates that "'[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce' a statutory minimum hourly wage…. The Department regulations require that the minimum wage be paid 'finally and unconditionally' or 'free and clear.'" *Stein v. hhgregg, Inc*., 873 F.3d 523, 530 (6th

2

Cir. 2017) (citing 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35).

The "anti-kickback" regulation implementing the FLSA states:

> Whether in cash or in facilities, "wages" cannot be considered to
> have been paid by the employer and received by the employee
> unless they are paid finally and unconditionally or "free and clear."
> The wage requirements of the Act will not be met where the
> employee "kicks back" directly or indirectly to the employer or to
> another person for the employer's benefit the whole or part of the
> wage delivered to the employee. This is true whether the
> "kickback" is made in cash or in other than cash. For example, if it
> is a requirement of the employer that the employee must provide
> tools of the trade which will be used in or are specifically required
> for the performance of the employer's particular work, there would
> be a violation of the Act in any workweek when the cost of such
> tools purchased by the employee cuts into the minimum or
> overtime wages required to be paid him under the Act. See also in
> this connection, § 531.32(c).

29 CFR § 531.35.

The anti-kickback regulation," prohibits any arrangement that "'tend[s] to shift part of the

employer's business expense to the employees . . . to the extent that it reduce[s] an employee's

wage below the statutory minimum.'" *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d

1196, 1199 (5th Cir. 1972). "The wage requirements of the Act will not be met where the

employee 'kicks back' directly or indirectly to the employer or to another person for the

employer's benefit the whole or part of the wage delivered to the employee." 464 F.2d at 1199

(quoting 29 C.F.R. § 531.35); see also *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th

Cir. 2011) (quoting *Mayhue's*); *Rivera v. Peri & Sons Farms, Inc*., 735 F.3d 892, 898 (9th Cir.

2013) (requiring the employer to reimburse for travel and immigration expenses incurred before

the employment relationship began because these expenses were "essential for the …

employment relationship to come to fruition."); also *Martin v. Petroleum Sales, Inc*., No. 90-cv-

2453-4A, 1992 WL 439740, *15 (W.D. Tenn. Jul. 9, 1992) ("Wage payments must be made

'free and clear' and without 'kickbacks' to the employer or to another person for the employer's benefit. 29 C.F.R. § 531.35. Such an attempt to shift part of the employer's cost of doing business [cash shortages] to the employee is illegal.") (citing *Mayhue's*, 464 F.2d at 1199).

In the pizza delivery context, the cost associated with delivering food for an employer is a "kickback" to the employer unless it is fully reimbursed, lest a minimum wage violation be triggered. See, e.g., *Perrin v. Papa John's Int'l, Inc*., 114 F. Supp. 3d 707 (E.D. Mo. July 8, 2015); *Graham v. The Word Enters. Perry, LLC*, No. 18-cv-0167, 2018 WL 3036313, *4 (E.D. Mich. Jun. 19, 2018) ("An example of such an expense are tools of the trade that the employee must provide which is required to perform the job, such as a personal car that an employee operates to make pizza deliveries."); *Ke v. Saigon Grill, Inc*., 595 F.Supp.2d 240, 258 (S.D.N.Y. 2008) (holding that deliverymen's bicycles and motorbikes were "tools of the trade," such that costs related to those vehicles had to be reimbursed by the employer where deliverymen otherwise earned minimum wage).

As a general principle, employers are not permitted to "guess" or "approximate" a minimum wage employee's expenses for purposes of reimbursing the expenses. This would result in some employees receiving less than minimum wage, contrary to the FLSA mandate. Instead, as a general proposition, the FLSA requires employers to pay back the actual expenses incurred by the employees. In the pizza delivery driver context, however, determining and maintaining records of each employee's actual expenses is a cumbersome task for the employer. The Department of Labor addressed this in its Field Operations Handbook, by giving employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate:

30c15 Car expenses: employee's use of personal car on employer's

4

business.

In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

(a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis.

See DOL Field Operations Handbook§ 30c15(a)(2000).

The Court notes that the Field Operations Handbook is not a regulation, but an "interpretation[] of Department regulations" that was "not subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment"; the Field Operations Handbook is therefore "not controlling or entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984)." *Stein v. hhgregg, Inc*., 873 F.3d 523, 532 (6th Cir. 2017) (internal quotation marks, parallel & pinpoint citations omitted). The Field Operation Handbook is, however, one of the "interpretations, opinions and explanatory guidelines" of the Department of Labor, to which a court "may properly resort for guidance" under *Skidmore v. Swift & Co*., 323 U.S. 134 (1944). *Stein*, 873 F.3d at 532. The weight to be given such matter in a particular case "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id*. (quoting *Skidmore*, 323 U.S. at 140).

5

The process for determining whether to give deference to the Department of Labor Field Operations Handbook is two-fold. First, the Court should determine if the regulation is unclear. 29 C.F.R. § 531.35 does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. Thus, there is ambiguity as to how to calculate the mileage rate.

Second, if the methodology for calculating the mileage rate is unclear, and the Field Operations Handbook has provided a procedure, then the Court should next determine if the Handbook interprets the regulation in a manner that is neither plainly erroneous nor inconsistent with the regulation. The Court considers whether deference is appropriate for the Department of Labor's interpretations of its own regulations, where the regulations give specificity to a statutory scheme that the Department enforces.

Plaintiffs have the burden of proving they were not paid the applicable minimum wage. An "FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *O'Brien v. Ed Donnelly Enters., Inc*., 575 F.3d 567, 602 (6th Cir. 2009) (internal quotation marks & brackets omitted); accord, e.g., *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686-87 (1946); *Robinson v. Roberts Hotels Mgmt. Detroit, LLC*, 661 F. App'x 890, 891 (6th Cir. 2016); *Oldham v. USPS*, 465 F. App'x 440, 444 (6th Cir. 2012). Thus, if Plaintiffs show that Defendants' compensation dropped drivers below minimum wage, they have met their burden.

Plaintiffs have the burden of proving they "performed work for which [they] were not properly compensated." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017). Moreover, minimum wage violations generally must be proven on a week-by-week basis. The burden for proper payment, however, falls on the employer. *Caserta v. Home Lines Agency*, *Inc*., 273 F.2d

6

943, 946 (2d Cir. 1956) (the "obligation of [FLSA compliance] is the employer's and it is absolute."). Once a violation is shown, it is the employer's burden to prove it acted with good faith and a reasonable belief that it complied with the law. 29 U.S.C. § 260.

In meeting their burden, delivery drivers may rely on a reasonable company-wide estimate of per-mile vehicle costs. The IRS rate is one such estimate. *Perrin v. Papa John's Int'l., Inc.* ("*Perrin II*") examined a request for nation-wide class certification of the same claim. No. 4:09-cv-1335, 2013 WL 6885334, **4-8 (E.D. Mo. Dec. 31, 2013)("Defendants' assertion that individualized showings of each Plaintiff's vehicle expenses will be required to prove Plaintiffs' claims is without merit. Defendants' own reimbursement methodology does not depend upon the drivers' actual expenses and the regulatory framework does not require that reimbursement be based on actual expenses." Id. at *7). *Oregal v. PacPizza, LLC* held that "[t]he appropriate mileage reimbursement rate will … be applied to all class members." Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty., Cal. May 14, 2014) (Ex. 1), at 5 (emphasis added); *Villalpando v. Exel Direct Inc*., Nos. 12-cv-4137, 13- cv-3091, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) (recognizing that showing of reasonable reimbursement rate constitutes proof common to the entire class); *Behaein v. Pizza Hut, Inc*., No. BC541415 (Sup. Ct. of L.A. Cnty. July 15, 2015) (Ex. 2), at 8-10 (recognizing that common class-wide proof entails estimated vehicle costs, rather than requiring each delivery driver to prove his or her own actual vehicle costs).

Once a violation is shown, it is the employer's burden to prove it acted with good faith and a reasonable belief that it complied with the law. 29 U.S.C. § 260.

Failure to pay the IRS rate is not, in and of itself, a violation. The Handbook states that when actual expenses have not been maintained, the IRS mileage rate is used to determine

7

minimum wage compliance. Defendants, knowing they would ask their employees to incur

substantial expenses on their behalf, could have paid a wage rate safely above minimum wage. In

such a circumstance, their reimbursement policy might never come into question.

Defendants also could have paid the workers their actual costs for delivering pizza.

Again, Defendants chose not to. This leaves the Handbook's second method of reimbursing

vehicle-related expenses as Defendants' only remaining option to comply with the FLSA's

minimum wage requirement— reimburse delivery drivers at the IRS mileage rate.

The IRS mileage rate is a data-driven and systematic methodology for estimating the cost

of driving a mile. The IRS mileage rate is:

> a rate determined by the IRS that a taxpayer can deduct per mile
> driven for business, charitable activities, moving or medical
> purposes. The standard mileage rate changes regularly to keep up
> with inflation….The IRS bases these rates on cost data and
> analysis compiled every year by Runzheimer International, an
> independent research firm that contracts to the IRS. Runzheimer
> International uses data from across the country and measures auto
> insurance premiums, gas prices, maintenance costs, depreciation
> and other costs that go into operating a vehicle.

Julia Kagan, Standard Mileage Rate, Investopedia, (June 13, 2018).

"Since 1980, the IRS has worked with Runzheimer to calculate the business mileage

deduction rate, using a consistent method and statistical analysis of vehicle cost components….

[The rate] reflect[s] the movement of prices in the marketplace." IRS Announces 2018 Business

Mileage Rate of 54.5 Cents-Per-Mile with Cost Data and Analysis by Runzheimer, Business

Wire, (December 14, 2017, 3:13 PM). The IRS mileage rate is the real cost of driving a vehicle.

It does not include any cost components that are inapplicable to the costs that the pizza delivery

drivers incur. There is no reason not to use the IRS mileage rate in this case; it is neither plainly

erroneous nor inconsistent with the regulation.

8

Since 2000, the Handbook has provided that in the absence of actual costs, the IRS mileage rate applies. The Department's approach recognizes that—when an employer is standing on the minimum wage fault line—an employer cannot and should not be allowed to guess, estimate, or come "close enough" to reimbursing for these substantial expenses. Instead, the law should provide a clear directive of how to comply with the minimum wage laws. The Department's approach creates a bright line for employers to follow. The "IRS rate or actual expenses" method is the appropriate measure.

> Because the vehicles owned by the delivery drivers are considered "tools of the trade," 29 C.F.R. § 531.35, and required by [the employer] as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid.

*Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018); see also *Zellagui v. MCD Pizza, Inc*., 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 3, 2014); and *Cornish v. Deli Mgmt., Inc.*, No. WMN-16- 672, 2016 WL 5934077, at *3 (D. Md. Oct. 12, 2016).

The Handbook's approach to mileage is consistent with the FLSA's remedial goals. The FLSA is a remedial statute that is designed to "protect all covered workers from substandard wages and oppressive working hours." *Encino Motorcars, LLC v Navarro*, 579 U.S. ____, 136 S. Ct. 2117, 2121, 195 L.Ed.2d 382 (2016) (quoting *Barrentine v. Arkansas–Best Freight System, Inc*., 450 U.S. 728, 739 (1981)). To meet that goal, both employees and employers must have clear rules to follow. The Fair Labor Standards Act's remedial goals are defeated if employees have no way of knowing whether they are being paid properly. See, e.g., 29 U.S.C. 203(m) (requiring tipped employees to receive notice of the FLSA's tip credit provisions).

9

The FLSA requires employers to keep records of employees' "wages, hours, and other conditions and practices of employment maintained by him…" 29 U.S.C. § 211(c). Given that neither party disputes that the drivers' cars are "tools of the trade," the cost of which reduces the drivers' effective wages, employers must maintain records of those costs under either the "wages" or "other conditions and practices of employment" portions of Section 211(c).

Department of Labor regulations require employers to maintain records of employees' expenses, including:

> total additions to or deductions from wages paid each pay period
> including employee purchase orders or wage assignments. Also, in
> individual employee records, the dates, amounts and nature of the
> items which make up the total additions and deductions.

29 C.F.R. § 516.2(a)(10). "[T]here is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear." *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002). The regulations also require employers to maintain records of "total wages paid each pay period." 29 C.F.R. § 516.2(a)(11). Because employee-incurred expenses affect "total wages," this provision also requires employers to maintain records of delivery drivers' vehicle expenses.

In the pizza delivery driver context, a reasonably diligent employer must in some manner maintain records of vehicle costs, even if the FLSA and Regulations did not already require the employee to do so. See *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 389 (6th Cir. 2016) (requiring the exercise of reasonable diligence to determine whether a worker is working uncompensated hours. C.F.R. § 516.6(c) requires the employer to maintain the records for at least two years. The "obligation of [FLSA compliance] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate recordkeeping, 29

10

U.S.C. § 211(c), and of appropriate payment, to the employee." *Caserta v. Home Lines Agency, Inc.*, 273 F.2d at 946.

Because the "Free and Clear" regulation "does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work," *Hatmaker I*, at *3, the "Free and Clear" regulation is ambiguous as applied to valuing vehicle expenses. Id. at *4. In a situation involving regulatory ambiguity that "entail[s] the exercise of judgment grounded in policy concerns," courts should defer to an agency's reasonable interpretation of its regulations. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2410 (2019). The Field Operations Handbook sets forth a methodology for valuing vehicle expenses that is both reasonable and consistent with the FLSA's text and purpose. *Hatmaker I*, 2019 WL 5725043, at *4–6. The Handbook's methodology "provides employers with a clear directive for minimum wage compliance and allows them to avoid the substantial costs of keeping records of their employees' actual expenses. It likewise provides employees a clear understanding of how the minimum wage laws apply to them." Id. at *7. Accordingly, courts defer to the Handbook's methodology for valuing vehicle expenses. Id.

On August 31, 2020, after many courts had defined the meaning of the "Free and Clear" regulation, the Department published an Opinion Letter that adopted the pizza industry's favored "approximation" standard. U.S. DEP'T. OF LAB., FLSA 2020-12 (Aug. 31, 2020). The Department itself argued for the Handbook's standard as recently as six days before publishing its Letter. See *Scalia v. Arizona Logistics, Inc.,* Case No. 2:15-cv-04499-DLR, Doc. 203 at p. 13, fn. 20 (D. Ariz. Jul. 8, 2020),'s Motion for Summary Judgment; Id., Doc. 214 at p. 19, fn. 11 (D. Ariz. Aug. 25, 2020), Response to Defendants' Motion.

A lack of regulatory guidance for specific, real world scenarios is a "familiar problem in administrative law." *Kisor*, 139 S. Ct. at 2410. Regulations may be "genuinely ambiguous" because they do not "directly or clearly address every issue" or "when applied to some fact patterns, they may prove susceptible to more than one reasonable reading." Id. Moreover, the "subject matter of a rule 'may be so specialized and varying in nature as to be impossible'—or at any rate impracticable—to capture in its every detail." Id., quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947).

The Supreme Court provided five examples of ambiguity that arise when a regulation is applied to a particular factual scenario. Id. at 2410. Those examples are analogous to the vehicle cost question in this case. In these situations, courts should defer to "agencies' reasonable readings of genuinely ambiguous regulations." Id. at 2408. This is commonly referred to as "*Auer* deference." Id. *Auer* deference is based on the "presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities," rather than the courts. Id. at 2412. Part of the reason for this presumption is that resolving regulatory ambiguities "often 'entail[s] the exercise of judgment grounded in policy concerns.'" Id. at 2413, quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Congress "is attuned to the comparative advantages of agencies over courts in making such policy judgments." Id. Agencies, unlike courts, often have unique scientific or technical expertise, especially as related to the agency's specific realm of administration, and "can conduct factual investigations, can consult with affected parties, [and] can consider how their experts have handled similar issues." Id. Moreover, the presumption in favor of agency deference "reflects the well-known benefits of uniformity in interpreting genuinely ambiguous rules," particularly in areas that are "complex and highly technical" in nature. Id. at 2413–14. *Auer* deference "imparts 'predictability to the

12

administrative process.'" Id., quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158, n.17 (2012).

Although agency or *Auer* deference is useful, it is not without limits. It is only to be used when, after exhausting the normal modes of regulatory interpretation, a regulation remains genuinely ambiguous as to a specific scenario. Id. at 2414–15. Even then, the agency's interpretation must be "reasonable." Id. at 2415–16. Assuming the agency's interpretation is reasonable, it must also "be one actually made by the agency. In other words, it must be the agency's 'authoritative' or 'official position,' rather than a more *ad hoc* statement not reflecting the agency's views." Id. at 2416. "Authoritative" has a broad meaning and includes even "official staff memoranda." Id., citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, n.9 (1980). In contrast, *ad hoc* statements that do not warrant deference include speeches from mid-level officials, informal memorandum recounting telephone conversations, and a "guide" that specifically states that compliance with the guide is not required. Id. at 2416–17 (citing cases).

Next, the agency's interpretation must "implicate its substantive expertise." Id. at 2417. The further the subject matter is from the agency's area of expertise, the less deference an agency's interpretation warrants. Id.

Finally, an agency's interpretation must reflect "fair and considered judgment."

> [A] court should decline to defer to a merely "convenient litigating position" or "post hoc rationalizatio[n] advanced" to "defend past agency action against attack." And a court may not defer to a new interpretation, whether or not introduced in litigation, that creates "unfair surprise" to regulated parties. That disruption of expectations may occur when an agency substitutes one view of a rule for another. We have therefore only rarely given *Auer* deference to an agency construction "conflict[ing] with a prior one.

13

Id. at 2417–18 (internal citations removed). Put simply, courts do not defer to an agency that suddenly reverses course with a new rule. Id

Here, the August 31, 2020 Letter claims that, contrary to the Handbook and court holdings, pizza companies can reimburse a "reasonable approximation" of drivers' expenses. The Department does little to define this standard, leaving employees in the dark as to what rights they have. The Letter fails the *Kisor* requirements, making it unworthy of deference for multiple, independently sufficient reasons.

*Kisor* describes a specific kind of agency interpretation that is entitled to deference: applying a regulation to a factual scenario that requires a policy judgment, usually resting on expertise in a technical or complex area. *Kisor*, 139 S. Ct. at 2410–11. The Letter does not rest on expertise in a technical or complex area.

First, the Letter acknowledges that 29 C.F.R. § 778.217 concerns only overtime calculations, but applies it to minimum wage compliance anyway. Id. at p. 2, n.2. The Letter thus attempts to overrule this Court's decision in *Hatmaker I* by claiming that this Court did not consider Section 778.217. Id. at p. 3, n.4. The Court did consider that regulation; it featured prominently in the parties' briefing in *Hatmaker*. See, e.g., *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, ECF 117, pp. 19–21, ECF 120, pp. 11–14, ECF 121, pp. 20–23. The Court did not apply 29 C.F.R. § 778.217 because that regulation does not govern minimum wage compliance.

Second, the Letter concludes that employers have no duty to keep records of an employee's vehicle expenses. Despite coming to this conclusion, the Letter concedes that employers "are required to keep a record of 'the dates, amounts, and nature of the items' that make up additions to or deductions from nonexempt employee's wages." Letter, p. 3, (quoting 29 C.F.R. § 516.2(a)(10)). The Letter also agrees that those records include "'the original cost,

14

operating and maintenance cost, and depreciation and interest charges' if those costs are involved

in the additions or deductions." Id., citing 29 C.F.R. § 516.6(c)(2). These are items that comprise

an employee's actual vehicle expenses.

> Because employee-incurred expenses affect "total wages," this
> provision also requires employers to maintain records of delivery
> drivers' vehicle expenses.
>
> In the pizza delivery driver context, a reasonably diligent employer
> must in some manner maintain records of vehicle costs, even if the
> FLSA and Regulations did not already require the employee to do
> so. See *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 389
> (6th Cir. 2016) (requiring the exercise of reasonable diligence to
> determine whether a worker is working uncompensated hours.
> C.F.R. § 516.6(c) requires the employer to maintain the records for
> at least two years. The "obligation of [FLSA compliance] is the
> employer's and it is absolute. He cannot discharge it by attempting
> to transfer his statutory burdens of accurate recordkeeping, 29
> U.S.C. § 211(c), and of appropriate payment, to the employee."
> *Caserta v. Home Lines Agency, Inc.*, 273 F.2d at 946.

*Hatmaker I*, 2019 WL 5725043, at *7.

The Letter disclaims that the Handbook is authoritative, Letter, p. 4, a handbook that

courts have repeatedly deferred to the Handbook as authoritative or persuasive. It also ignores

that the Department itself has argued that the Handbook is authoritative:

> Although the introduction to the [Field Operations Handbook]
> contains this language, the context makes clear that it states this,
> because the DOL may not immediately update the [Field
> Operations Handbook] "through changes in legislation,
> regulations, significant court decisions, and the decisions and
> opinions of the [Wage & Hour] administrator." Field Operations
> Handbook, https://www.dol.gov/whd/foh (last visited June 1,
> 2017). Furthermore, the [Field Operations Handbook] provides
> links to "other interpretive guidance," which supports the notion
> that the DOL treats the [Field Operations Handbook] as
> interpretative guidance. Id. (emphasis added). The DOL has also
> consistently taken the position in its amicus briefs, including the
> brief filed in this case, that the [Field Operations Handbook] is
> interpretive guidance. See Br. for the Secretary of Labor as Amicus

>Curiae in Support of Plaintiff–Appellant at 19, *Romero v. Top–Tier Colo., LLC*, 849 F.3d 1281 (10th Cir. 2017) (No. 16–1057) ("Opinion letters, [Field Operations Handbook] provisions, and amicus briefs have been among the Department's tools for issuing interpretations of regulations to which *Auer* deference is due."). Therefore, contrary to Defendants' contention, the DOL has made clear that it treats the [Field Operations Handbook] as interpretive guidance.

*Romero v. Top-Tier Colorado LLC*, 274 F. Supp. 3d 1200, 1207 (D. Colo. 2017).

The Handbook reflects a reasoned determination that the IRS mileage rate is an appropriate proxy for reimbursement when an employer fails to keep records. This is exactly the type of fact-specific issue that *Kisor* endorses as a proper area for agency interpretation. On the other hand, the Letter focuses on legal judgments that are contrary to court-established law.

Although the Department can issue interpretive guidance on specific factual issues, the Department has no power to tell courts which regulations to apply to a particular situation, the scope of a reasonably diligent employer's recordkeeping duties, or whether a regulation is "ambiguous." The "ultimate decisions on interpretations of the act are made by the courts." 29 C.F.R. § 785.2. An agency's attempt to replace court decisions with its own legal judgments is agency overreach and not entitled to any deference under *Kisor*.

Even if the Letter's interpretation was the type that could be entitled to deference, the interpretation is not reasonable. The Letter misconstrues the law. Even if an agency could interpret the law (rather than provide guidance on applying ambiguous regulations to a specific factual scenario), the Department's interpretation is wrong and contrary to the Court's holding in *Hatmaker I*. The Letter's "interpretation" provides no guidance at all. The Letter simply states that pizza companies can "approximate" expenses. Given the complexity of valuing vehicle expenses (consider depreciation, wear and tear, maintenance, financing, insurance, registration,

16

etc.), this means virtually nothing and, as a result, is unreasonable. As this Court held, to meet

the FLSA's remedial goals, "both employees and employers must have clear rules to follow. The

Fair Labor Standards Act's remedial goals are defeated if employees have no way of knowing

whether they are being paid properly." *Hatmaker I*, 2019 WL 5725043, at \*6.

> The Department's rule for pizza delivery drivers results in clarity
> for both delivery drivers and their employers. Employers can
> choose to take on the task of tracking delivery drivers' actual
> expenses or pay a set per-mile reimbursement rate. A neutral
> arbiter—the IRS—creates, monitors, and updates the rate, and it
> favors neither employers nor employees. Both employers and
> employees can readily access the rate. Moreover, employers,
> employees, and courts can precisely determine whether an
> employer is complying with the employer's minimum wage
> obligations. This can be done at relatively low litigation cost, likely
> through a motion for judgment on the pleadings or at summary
> judgment.

Id.

The Letter claims that employers need not necessarily reimburse drivers for fixed

expenses like insurance and registration fees. Letter at 6–7. These expenses, however, are for the

employer's benefit and can be easily prorated—as the IRS rate does—on a per mile basis. Thus,

employers can reimburse only for those portions of fixed costs that benefit the employer. The

Letter conflicts with the Handbook, which includes these items as reimbursable costs because

they are included in the IRS rate.

The Letter does not "implicate [the Department's] substantive expertise." *Kisor*, 139 S.

Ct. at 2417. The Letter does not reflect the agency's "fair and considered judgment." *Kisor*, 139

S. Ct. at 2417–18. Under *Kisor*, courts should not defer to an agency's interpretation when it is

merely a "convenient litigating position." Id. Here, the agency has endorsed the pizza industry's

litigating position—in the midst of numerous lawsuits on this very issue. See, e.g., *O'Neal v.*

17

*Denn-Ohio, LLC*, 2020 WL 210801, *7 (N.D. Ohio Jan. 14, 2020) (refusing to defer to the Department's new interpretation of the Handbook's "20% rule" and calling it a "convenient litigating position"). After two decades of the Department prescribing a binary choice for minimum wage compliance, the Department announced that it permits a third, ambiguous standard for compliance— contrary to the Department's own recent briefing. "In the face of such longevity and consistency, we are mindful that the Supreme Court requires compelling justification for such a dramatic shift in agency interpretation." *Sicklesmith v. Hershey Entm't & Resorts Co.*, 440 F. Supp. 3d 391, 403 (M.D. Pa. 2020).

An agency interpretation that "conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *INS v. CardozaFonseca*, 480 U.S. 421, 447 n.30 (1987), quoting *Watt v. Alaska*, 451 U.S. 259, 273 (1981); *NRDC v. U.S. EPA*, 526 F.3d 591, 602 (9th Cir. 2008). The Supreme Court has "declined to follow administrative guidelines in the past where they conflicted with earlier pronouncements of the agency." *Gen. Elec. Co. v. Gilbert*, 439 U.S. 125, 143 (1976). If the Department departs from its prior interpretation, it must explain why. It must make more than a perfunctory attempt to consider important costs, including costs to workers, and explain why the benefits of the new rule outweigh those costs. *New York v. Scalia*, No. 1:20-cv-1689, 2020 WL 5370871, *33 (S.D.N.Y. Sept. 8, 2020).

**III.    Conclusion**

Because the August 31, 2020 Department of Labor Opinion Letter, U.S. DEP'T. OF LAB., FLSA 2020-12 (Aug. 31, 2020), does not persuade the Court that its prior determination was incorrect, the Court again holds:

> [the IRS standard business mileage rate] provides employers with a
> clear directive for minimum wage compliance and allows them to
> avoid the substantial costs of keeping records of their employees'
> actual expenses. It likewise provides employees a clear
> understanding of how the minimum wage laws apply to them. As a
> matter of law, that the proper measure of minimum wage
> compliance for pizza delivery drivers is to either (1) track and pay
> delivery drivers' actual expenses or (2) pay the mileage
> reimbursement rate set by the Internal Revenue Service. Plaintiffs
> meet their burden by showing they were not compensated by an
> amount equal to the minimum hourly wage plus the mileage
> reimbursement rate set by the Internal Revenue Service.
> Defendants may rebut this by showing that they tracked and paid
> actual expenses and paid an amount equal to the minimum hourly
> wage rate plus actual expenses.

*Hatmaker II*, 2020 WL 1129325, at *7. Thus, Plaintiffs' Motion for Partial Summary Judgment,

ECF 37; is **GRANTED**. The parties are **ORDERED** to submit an amended Rule 26 (f) report by

May 21, 2021.

      **DONE** and **ORDERED** in Dayton, Ohio, this Friday, May 7, 2021.

                           s/Thomas M. Rose

                                 _____
                                      THOMAS M. ROSE
                              UNITED STATES DISTRICT JUDGE