IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Kirk Waters, *On behalf of himself and those similarly situated*, Plaintiffs, v. Pizza to You, L.L.C., *et al.*, Defendants. | Case No. 3:19-cv-372 Judge Thomas Rose |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

Plaintiff Kirk Waters asks the Court to preliminarily approve the settlement between himself, the FLSA collective, and the Rule 23 class (collectively, "Plaintiffs") and Defendants Pizza to You, L.L.C., Pizza to You 2, L.L.C., Pizza to You 3, L.L.C., Pizza to You 4, LLC, Pizza to You 5, LLC, PRM Management LLC, Peter Marrocco, and Rosemary Marrocco (collectively, "Defendants"). The proposed Settlement Agreement, attached as Exhibit 1, resolves the collective and class-wide claims raised in this lawsuit. Defendants do not oppose this motion. Plaintiffs ask that the Court:

(1) Preliminarily approve the proposed settlement.

(2) Approve the content, form, and distribution of the class notice.

(3) Preliminarily approve the service award for the Plaintiff.

(4) Provisionally approve Class Counsel's request for attorneys' fees and costs.

(5) Schedule a fairness hearing approximately 150 days after preliminary approval.

The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

/s/ *Riley Kane*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Kirk Waters, *On behalf of himself and those similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Pizza to You, LLC, *et al.*, <br><br> Defendants. | Case No. 3:19-cv-372 <br><br> Judge Thomas Rose |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT APPROVAL

1. **Introduction**

Plaintiff Kirk Waters, on behalf of himself, the FLSA collective action members, and the Rule 23 class members (collectively, "Plaintiffs"), and Defendants Pizza to You, L.L.C., Pizza to You 2, L.L.C., Pizza to You 3, L.L.C., Pizza to You 4, LLC, Pizza to You 5, LLC, PRM Management LLC, Peter Marrocco, and Rosemary Marrocco (collectively, "Defendants") have reached a Settlement Agreement (Exhibit 1). If approved, the Settlement Agreement will resolve the claims against Defendants that Plaintiffs asserted in the lawsuit. Defendants do not oppose this motion.

Plaintiffs now ask the Court to begin the approval process and preliminarily approve the Parties' Settlement Agreement.

**2. Background of the Lawsuit and the Claims**

This litigation began on November 22, 2019, when Kirk Waters, a pizza delivery driver, sued Defendants under state and federal wage laws. *See* Doc. 1 (Compliant). Defendants include various entities and individuals that Plaintiffs allege own and operate five Jet's Pizza franchise locations. Defendants dispute that some of the individuals and/or entities qualify as "employers" for purposes of wage and hour laws.

This lawsuit alleges several wage and hour claims, all centered on Defendants' vehicle reimbursement policy. Specifically, Plaintiffs allege that Defendants required delivery drivers to provide their own vehicles to deliver Defendants' pizza and other food. The crux of the Parties' dispute is whether the reimbursement provided by Defendants adequately reimbursed Plaintiffs for their vehicle expenses.

In addition to the under-reimbursement claim, Plaintiffs contend that Defendants failed to pay minimum wage because they failed to properly claim a tip credit from the delivery drivers' wage. Specifically, Plaintiffs contend that, after accounting for unreimbursed vehicle expenses, Defendants did not actually pay the tipped wage rate they promised to pay, and therefore forfeited their right to claim a tip credit offset.

Finally, Plaintiffs allege that these policies and practices not only violated federal and state minimum wage laws, but also violated the Ohio Prompt Pay Act, O.R.C. § 4113.15, violated Ohio's Criminal Act's statute, O.R.C. § 2307.60, and resulted in Defendants being unjustly enriched by the delivery drivers.

Shortly after filing his Complaint, Plaintiff filed his Motion for Conditional Certification of an FLSA Collective Action on December 23, 2019. Doc. 4. On March 9, 2020, the Court granted

conditional certification. Doc. 20. Plaintiff sent notice of this action to over 170 putative opt-in plaintiffs, and 48 delivery drivers joined the case to pursue their FLSA claims.

On October 8. 2020, Plaintiff moved for Rule 23 class certification of his minimum wage claims arising under Ohio Constitution, Article II, Section 34a, his O.R.C. 4113.15 claims, his O.R.C. 2307.60 claims, and his claims for unjust enrichment. Doc. 34.

On October 11, 2020, Plaintiff filed a Motion for Summary Judgment contending that, because Defendants did not keep records of the actual vehicle expenses incurred by their minimum wage delivery drivers, they were obligated to reimburse them at the IRS standard business mileage rate. Doc. 37. The Court granted Plaintiff's Motion for Summary Judgment on May 7, 2021. Specifically, the Court held that "[a]s a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service." *See* Doc. 53.

On April 9, 2021, Defendants filed a Motion for Summary Judgment arguing that Defendant Pete Marrocco does not qualify as an "employer" of Plaintiff and other delivery drivers under the FLSA. Doc. 51. Because the Parties had not yet completed discovery on this point, Plaintiff moved to hold this Motion in abeyance. Doc. 52. The Court granted Plaintiff's Motion and held Defendants' Motion for Summary Judgment in abeyance. Notation Order of June 16, 2021.

While the Parties were conducting discovery on the question of whether Mr. Marrocco qualifies as an employer, on November 17, 2021, they also attended a mediation with experienced private mediator Stephen Calardo. The Parties did not reach a settlement at mediation. But, in the weeks after mediation, the Parties reached the agreement that is presently before this Court.

3

3. **Summary of Settlement Terms**

The Settlement Agreement requires Defendants to pay a total of $1,500,000 to resolve Plaintiffs' claims. The $1,500,000 is inclusive of expenses, service awards, and attorneys' fees. The fund will be distributed to every class member, without requiring anyone to submit a claim form. Each class member will receive his or her prorated share, based on the number of hours that they worked. However, no Plaintiff will receive a payment of less than $20 and the 49 FLSA collective members that have already opted into the case will receive a 1.25 × share due to their additional claims. The Rule 23 class members will receive a single share.

In order to facilitate Defendants being able to pay this sum, the settlement payments will be broken into two payments. Defendants will make a first payment of $750,000 within 40 days of the Court granting final settlement approval or by June 1, 2022, whichever is later. Within 14 days of receiving that first payment from Defendants, the Claims Administrator will issue the first round of checks to Plaintiffs. Defendants will make a second payment of $750,000 on or before June 1, 2023. Within 14 days of receiving that second payment from Defendants, the Claims Administrator will issue the second round of checks to Plaintiffs.

4. **Standard for Settlement Approval**

Courts typically use a three-step procedure for approving class-wide settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011). First, the Court determines whether to preliminarily approve the settlement. *Id.* Second, notice of the settlement is sent to interested persons. *Id.* And third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard. Courts in the Sixth Circuit consider six factors when deciding whether to approve a settlement. Those factors include (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–85 (6th Cir. 2019) (citing *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007); *see also Kritzer*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *20 (applying this test).

5. **The Settlement provides a fair resolution of disputed claims.**

When evaluating a settlement, the most important consideration is the plaintiff's probability of success on the merits. *Déjà Vu*, 925 F.3d at 895 (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). To assist the Court with that endeavor, Plaintiffs will describe the facts and law underlying his claims.

Here, at the time the Parties entered the settlement, the Court had already granted Rule 23 class certification and granted Plaintiff's Motion for Summary Judgment, such that the Parties knew that Defendants were required to reimburse at the IRS standard business mileage rate for all miles driven by the delivery drivers. While Plaintiffs are confident that the Court's decision was the right one, if the case does not settle, Defendants can appeal it. A successful appeal would

dramatically affect Plaintiffs' potential damages. If Defendants successfully appealed the legal standard, they could argue that what they paid (on average, $.19 per mile) "reasonably approximated" the drivers' expenses and, thus, that there was no violation at all. Plaintiffs would argue that $.19 per mile does not "reasonably approximate" the drivers' expenses, and that the class suffered damages. Experts would likely opine on what a "reasonably approximate" amount could be, resulting in a range of potential damages (with $0 being a possible outcome). Thus, Plaintiffs' ultimate success is uncertain.

Further, even though the primary legal standard question has been decided, there are still a number of issues in dispute. First, the Parties disputed the basic facts of the case—i.e., the miles driven and reimbursements paid. Based on a sampling of Defendants' data, Plaintiff estimated that the delivery drivers drove approximately 2.26 million miles and were reimbursed approximately $435,000 from November 2016 to August 2020,[1] which would result in an under-reimbursement amount of approximately $829,000. Defendants, on the other hand, contend that the delivery drivers drove far fewer miles, and contend the under-reimbursement amount at the IRS rate was less than $400,000.

Second, the Parties dispute whether Defendants had adequately claimed a tip credit from the delivery drivers' wages. Defendants contend they provided proper notice. Plaintiffs contend that, even if Defendants provided the drivers with a tip credit notice, it could not have been accurate because it quoted a cash hourly wage rate that Defendants did not, in fact, pay the delivery drivers after factoring in the unreimbursed expenses.

---

[1] Defendants produced records to Plaintiffs' Counsel that demonstrate that Defendants began reimbursing drivers at the IRS rate at that time.

6

Third, the Parties disputed whether Defendant Pete Marrocco qualified as an "employer" under the FLSA and Ohio law. Defendants had filed a Motion for Summary Judgment on this point, which was pending. This was a concern for Plaintiffs because collectability was a concern in this case.

As it stands, using an approximate IRS rate of $.56, Plaintiffs contend that Defendants under-reimbursed Plaintiffs' vehicle expenses by approximately $829,000. Plaintiffs also contend that the opt-in Plaintiffs are entitled to an additional 1× under the FLSA, and all of the delivery drivers are entitled to an additional 2× unpaid wages under the Ohio Constitution, damages under O.R.C. § 4113.15 in the amount of $200 per pay period, punitive damages under O.R.C. § 2307.60, and restitution damages under a theory of unjust enrichment. Moreover, the various laws at issue also entitle prevailing plaintiffs to recover their reasonable attorney's fees and costs. Defendants, on the other hand, contends that, even using the IRS rate, Plaintiffs have suffered less than $400,000 in unpaid wages.

Aside from Defendants' legal and factual arguments (which dispute the merits of Plaintiffs' allegations and claims), Defendants also claim that they are unable to withstand a judgment or settlement greater than that which could be reached here. During mediation, Defendants provided some limited financial information that tends to support their claim. While collectability was a factor, Plaintiffs contend that the settlement is fair, adequate, and reasonable on the merits of the claims asserted.

Whether through fighting the merits of this lawsuit through appeal or because of a lack of collectability, Plaintiffs risk a worse result if litigation continued. This risk weighs in favor of

7

settling the case at this time and supports the settlement reached here. As it stands, the Settlement Agreement provides substantial relief to the aggrieved workers.

6. **Additional Fairness Considerations**

**Complexity, expense and likely duration.** Wage and hour class and collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential for expert testimony. This case is no different, so this factor weighs in favor of approving the settlement.

**Stage of the proceedings and discovery.** The Parties have litigated this case for over three years. The Parties have filed numerous, substantive motions—including motions for partial summary judgment and class certification—and have completed substantial discovery. Conditional certification was granted, notice was sent, and that process has completed. cruel 23 Class certification was also granted. At this stage, the Parties are able to evaluate settlement and value the case for that purpose.

**Trial counsel's judgment.** Plaintiffs' counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution.

**Negotiations.** As addressed above, the Parties negotiated this case through formal mediation and additional informal settlement discussions. This process, along with the hotly contested docket entries, demonstrates that the settlement was reached through arms-length negotiations. This factor weighs in favor of approval.

**Class member objections.** The class members have not yet received notice, so this factor will need to be evaluated at final approval.

**The public interest.** The public has an interest in both resolving complex class actions, which require significant Court resources that could be allocated to other matters. Further, because "[t]he settlement agreement itself is… public rather than confidential" this "supports the interests of other employees, the Congress, and the public, in seeing that FLSA disputes are resolved in a fair and reasonable way that is consistent with the requirements of the statute." *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 WL 2880394, 2017 U.S. Dist. LEXIS 104269, at *6 (M.D. Tenn. July 5, 2017). The public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages.

7. **The proposed attorneys' fee award is reasonable and should be approved.**

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($500,000.00). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019) (An award of one-third "is a normal fee amount in a wage and hour case."); *see also Dewald v. Time Warner Cable Inc.*, 2021 WL 687246, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement."). "Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Dewald*, 2021 WL 687246, 2021 U.S. Dist. LEXIS 32459, at *16.

The Settlement Agreement is not conditioned on an award of attorneys' fees. Thus, the Court need not make a final decision as to fees and costs now. Instead, Plaintiffs ask that the Court provisionally approve the fee award, subject to any objections from Class Members prior to final approval. Provisionally approving the fee award at this stage serves a useful function, however, because the Class Members can be accurately informed in the notice as to what to expect with respect to attorneys' fees and costs.

Regardless, Class Counsel will expend additional time on this case during the notice and approval process, which would affect the Court's final evaluation of the final fee award, to the extent that the Court conducts a lodestar crosscheck. Likewise, Class Counsel will incur additional expenses between now and final approval, including, for example, costs of sending notice to the Class Members. At the final fairness hearing, the Court will have a full record to be able to evaluate Class Counsels' request for fees and a reimbursement of expenses.

**8. The incentive payment is reasonable, and similar payments are routinely awarded.**

Named Plaintiff Kirk Waters requests a $10,000 incentive service award. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real."

10

*Brandenburg*, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply in this case.

The proposed incentive award is typical in these types of cases. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 WL 3790866, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases).

**9. The Court previously certified this action as a Rule 23 class action.**

On January 22, 2021, the Court found that Plaintiff and his claims satisfied the Rule 23(a) and Rule 23(b)(3) standards for class certification and accordingly certified this action as a class action with regard to counts 2, 3, 4, and 5 of the Complaint. *See* Doc. 47 (Order Granting Class Certification); Doc. 1 (Complaint).

**10. The Court should grant final certification to the FLSA collective.**

In FLSA collective actions, "class certification typically occurs in two stages: conditional and final certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). At the conditional stage, "Plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (citation omitted). At the final certification stage, "the Court applies 'a stricter standard than the conditional certification stage….'" *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-758, 2014 WL 3735460, 2014 U.S. Dist. LEXIS 102549, at *13 (N.D. Ohio July 28, 2014) (citing *Frye*, 495 F. App'x at 671). The Sixth Circuit has explained that "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009), *abrogated on*

11

*other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)). For the same reasons that the Court previously granted class certification, it is appropriate to grant final certification of the FLSA collective. Further, Defendants do not oppose granting final certification of the FLSA collective for the purpose of settlement.

**11. The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See* Exhibit 2, Notice of Settlement. The notice also informs class members that they may enter an appearance through counsel if the member so desires and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).

The Court should direct distribution of the class notice in the manner described in the Settlement Agreement. The Settlement Agreement envisions sending the Notice by first class mail and email.

**12. The Court should set a hearing for final approval.**

The Plaintiffs request that the Court set a hearing for final approval of the settlement to occur approximately 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement, but will not unduly delay the case's adjudication. The timeline envisioned for administration is as follows:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants will transmit class contact information to Class Counsel and the Claims Administrator |
| Within 14 days of receiving the class list | The Claims Administrator will send the settlement notice to the class members |
| Up to 60 days after sending the notice | Class members can opt-out or object to the settlement |
| Within 45 days of the close of the notice period | Plaintiffs will draft and file a motion for final approval |
| Approximately 150 days after preliminary approval | The Court will hold a final fairness hearing |

### 13. Conclusion

Plaintiffs ask the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsels' request for attorneys' fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice to class members; and (5) setting a final fairness hearing date.

Respectfully submitted,

/s/ *Riley Kane*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

>                             /s/ *Riley Kane*
>                             Riley E. Kane