IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Kirk Waters, *On behalf of himself and those similarly situated*, Plaintiff, v. Pizza to You, L.L.C., *et al.*, Defendants. | Case 3:19-cv-372 Judge Thomas Rose |

ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Before the Court is Plaintiff's Unopposed Motion for Final Settlement Approval. On February 9, 2022, the Court preliminarily approved the settlement, attorney's fees, and incentive award and ordered the distribution of notice of the settlement to class members. The notice period has concluded. The Court has reviewed Plaintiff's Motion (Doc. 75). On July 13, 2022, the Court conducted a Final Fairness Hearing. For the reasons stated in this Order, the Court **GRANTS** Plaintiff's Motion.

**I. Background**

This is a wage and hour lawsuit brought on behalf of a class of approximately 180 pizza delivery drivers at five Jet's Pizza restaurants in and around Dayton, Ohio. Plaintiff Kirk Waters filed this lawsuit on November 22, 2019, as a putative class and collective action. Doc. 1. This lawsuit alleges several wage and hour claims, all centered on Defendants' vehicle reimbursement policy. Specifically, Plaintiff alleges that Defendants required delivery drivers to provide their own

vehicles to deliver Defendants' pizza and other food and under-reimbursed Plaintiff and the class for the cost of their vehicle expenses.

Under the Fair Labor Standards Act, pizza delivery drivers' vehicles are "tools of the trade." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 5, 2018). Accordingly, employers must ensure that they reimburse drivers for the costs related to those vehicles, to the extent that the failure to do so would drop the workers' wage below minimum wage. *See* 29 C.F.R. § 531.35; *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972).

In the delivery driver context, employers have two options to meet their reimbursement obligations. *Waters v. Pizza to You, L.L.C.*, 538 F. Supp. 3d 785, 792 (S.D. Ohio 2021). Employers can either track and reimburse each drivers' actual vehicle expenses, or employers can simply reimburse drivers at the IRS business mileage rate. *Id.*; DOL Field Operations Handbook § 30c15(a) (2000). The Ohio minimum wage constitutional provision uses the same standard. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *3–4 (S.D. Ohio Nov. 25, 2019).

Here, Plaintiff alleges that Defendants failed to avail themselves of either option and that Defendants' failure dropped Plaintiff's (and his fellow drivers') wages below the statutory minimum. This failure, if proven, would trigger a minimum wage violation and the forfeiture of the tip credit. *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245–46 (4th Cir. 2016) ("To be eligible for the 'tip credit' under the FLSA… defendants were required to pay dancers the minimum wage set for those receiving tip income and to notify employees of the 'tip credit' provision."). As a result of this alleged failure, Plaintiff brings claims for unpaid minimum wages under the Fair Labor Standards Act and the Ohio Constitution, Article II, Section 34a.

Plaintiff also alleges Defendants' actions violate the Ohio Prompt Pay Act, O.R.C. 4113.15. The Ohio Prompt Pay Act encompasses two types of claims. First, courts have repeatedly held that a violation of any other wage statute (like the FLSA) triggers a failure to timely pay wages under the Prompt Pay Act. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4–5 (S.D. Ohio May 17, 2021). In other words, the Prompt Pay Act requires employers to timely pay wages owed for any reason, whether statutory or otherwise. *Id.* Second, the Ohio Prompt Pay Act allows an employee to recover liquidated damages, but only if the wages due are not in dispute. O.R.C. 4113.15(B). Defendants contend that, here, the wages at issue are in dispute. If Defendants prevailed on this issue, the Prompt Pay Act would allow only for the recovery of unpaid wages, if proven. *Id.* As above, Defendants dispute the extent of Plaintiff's underlying wage claim.

Plaintiff also alleges Defendants' actions violate the Ohio Liability for Criminal Acts statute. Ohio Revised Code Section 2307.60 imposes civil liability for criminal acts. A willful violation of the FLSA is a criminal act. 29 U.S.C. 216(a). As above, Defendants contend that, to the extent there is liability at all, they did not act willfully. If Defendants prevailed on this argument, they would not be liable under O.R.C. § 2307.60. On the other hand, if Plaintiff prevailed in proving a willful violation of the FLSA, then O.R.C. § 2307.60 would impose additional damages on Defendants, including punitive damages. O.R.C. 2307.60(A)(1).

Finally, Plaintiff contends that Defendants have been unjustly enriched by their employment arrangement with their delivery drivers. Plaintiff contends that by using their own cars during their work for Defendants that they have conferred a benefit upon Defendants greater than their under-reimbursement damages. Plaintiff argues that because Defendants' employment

practices violated the law it is unjust for Defendants to retain that benefit without commensurate compensation. Defendants dispute dispute Plaintiff's claims.

## II. Legal Standard for Settlement Approval

Courts typically use a three-step procedure for approving class-wide settlements under Federal Rule of Civil Procedure Rule 23. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, at *1–20 (S.D. Ohio Jan. 10, 2011). This case has now reached the third step, where the court determines whether to finalize approval. *Id.*

In evaluating an FLSA settlement, the Court's role is comparable to that of a court in a settlement of a Rule 23 class action. *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *17 (S.D. Ohio May 30, 2012). But, in the FLSA context, courts' evaluative role is even more important, because they are tasked with ensuring that the interwoven public and private rights guaranteed by the statute are protected. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234–35 (M.D. Fla. 2010); *see also Tony & Susan Alamo Found. v. Secy. of Labor*, 471 U.S. 290, 302 (1985). In the statute's text, Congress explained that the FLSA's purpose was not only to protect individuals from the evils of overwork and underpay, but to protect American society from those harms as well. 29 U.S.C. § 202. The FLSA remedies more than pay, it guarantees a "minimum standard of living necessary for health, efficiency, and general well-being of workers," which is designed to ensure the free, orderly flow of goods in commerce and prevent the unfair methods of competition that threaten the health of the economy as a whole. *Id.* This is only possible with a set of publicly known, nationwide, minimum permissible employment standards.

The FLSA's purpose is thwarted if its protections can be casually waived. *See Alamo*, 471 U.S. at 302. As a result, "Congress made the FLSA's provisions mandatory and, except in two narrow circumstances, they are generally not subject to bargaining, waiver, or modification by

4

contract or settlement." *Lopez v. Silfex, Inc.*, No. 3:21-cv-61, 2021 WL 5795280, 2021 U.S. Dist. LEXIS 232508, at *8 (S.D. Ohio Dec. 3, 2021) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). However, "one of the exceptions allowing FLSA claims to be compromised is when a court reviews and approves a settlement agreement in a private action for back wages." *Kritzer*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *17 (internal capitalization altered) (citing *Lynn's Food*, 679 F.2d at 1353).

Review and approval by Federal District Courts are required for good reason. Federal Courts are uniquely capable of ensuing that the public's interest is advanced in the settlement of FLSA cases. The Sixth Circuit has endorsed heightened scrutiny of FLSA settlements due to "the well-known problems arising from the unequal bargaining positions of employers and employees and 'substandard wages and oppressive working hours'" which are implicated "to a significantly greater degree" in FLSA settlements. *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1043 n.6 (6th Cir. 1986) (internal citations omitted) (citing *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 739 (1981); *Alamo*, 471 U.S. at 302); *Casso-Lopez v. Beach Time Rental Suncoast, LLC*, 335 F.R.D. 458, 461 (M.D. Fla. 2020) (explaining that unapproved settlements are "illusory, ineffective, and unenforceable," that an employer cannot receive anything of value in exchange for the FLSA wage, and that there are "no evasive gimmicks allowed").

Due to the unique purpose of the FLSA and the unequal bargaining power between employees and employers, FLSA settlements require approval by either the Department of Labor or a Federal District Court. *Steele v. Staffmark Invs., Ltd. Liab. Co.*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016). The requirement that either the Department of Labor or a Federal District

Court approval any settlement of FLSA claims is a procedural rule unique to the FLSA, derived from the unique nature of the statue.

Therefore, when reviewing a proposed settlement in a suit brought by employees under the FLSA against their employer, it is necessary for courts to scrutinize settlements to ensure that they are (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Lynn's Food*, 679 F.2d at 1354–55.

### III. The Settlement Agreement

The Court has already scrutinized the parties' settlement and previously granted preliminary approval. *See* Doc. 73. To review, the settlement in this case obligates Defendants to pay $1,500,000, inclusive of expenses, fees, service awards, and administrative costs. Each class member will receive a prorated share. No Plaintiff will receive less than $20. The 49 FLSA collective members will receive a 1.25 × share due to their additional claims. The settlement will be disbursed in two payments—the first in the months following final approval, the second after June 2023. In exchange, Plaintiff and class members release the claims they raised in this lawsuit. *See generally*, Doc. 72-1 (the Settlement Agreement). The Court previously determined that five of the six fairness factors favored approving this settlement. Doc. 73 at PageID 910 (citing *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019)). The sixth factor, class member objections, could not be considered before notice. Now that the notice process has been completed, this factor is ripe for consideration.

The notice period ran from March 9, 2022, to May 9, 2022. Class Counsel sent notice by U.S. mail to the 180 class members and was emailed the 120 class members with available addresses. *See* Claims Administrator Dec., Doc. 75-1, ¶6. For notices that were returned as undeliverable, the Claims Administrator attempted to obtain an updated addresses for re-mailing.

6

*See Id.* at ¶7. This is an appropriate and proper notice process. Ultimately, 175 class members (or 97.22%) received at least one form of notice. *Id.* at ¶¶ 7–9. This is an excellent result and provided proper notice to the class members.

There were no objections and no class member requested to be excluded. Therefore, this factor also weighs in favor of approval.

The Court therefore finds that all six fairness factors favor approval.

## IV. Attorney's Fees, Advanced Litigation Costs, Settlement Administration Costs, and the Service Award

### A. Attorney's Fees

Class Counsel also asks that the Court award them attorney's fees and expenses incurred during the litigation. The Court turns to the fee request first.

Class Counsel seeks an award of $500,000 in attorney's fees, which is one-third of the settlement fund. The Court previously granted preliminary approval to Class Counsel's requested fees and approved assessing fees as a percentage-of-the-fund. Doc. 73 at PageID 912–13. Since no class member objected following the distribution of notice, the Court has no reason to reconsider its previous findings.

When a settlement creates a common benefit fund for a class, courts prefer the "percentage-of-the-fund method" for awarding fees in FLSA cases absent compelling reasons to the contrary. Doc. 73 at PageID 912; *See, e.g., Smith v. Local Cantina, LLC*, No. 2:20-cv-03064, 2022 WL 1183325, 2022 U.S. Dist. LEXIS 73598, at *12–14 (S.D. Ohio Apr. 19, 2022). The "percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class." *McConnell*, 2021 WL 1966062, 2021 U.S. Dist. LEXIS 97576, at *15.

Class Counsel's request for one-third of the common fund seeks a "normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *14–

7

15; *see also Dewald*, 2021 WL 687246, 2021 U.S. Dist. LEXIS 32459, at *16 ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement.").

Courts also analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474, at *11 (S.D. Ohio Oct. 17, 2018) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, 2018 U.S. Dist. LEXIS 139769, at *7 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007). Here, each of these factors weighs in favor of granting the requested fee.

The first factor favors the requested fee award. This settlement results in a substantial benefit to the class, and a worse outcome for the class was possible if litigation continued (from factual and legal disputes, or even the inability to collect a judgment). As it stands, the total settlement is approximately 180% of unpaid wages before attorney's fees and costs, as calculated by Plaintiff (which Defendants dispute), and even after subtracting the requested attorney's fees and all costs, the class members will still receive approximately 117% of their unpaid wages.

8

This is a good result. Lower settlements are common in wage and hour cases. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing Inc.*, 2010 WL 776933, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average.").

The value of the benefits rendered to the class is still-greater because the class members receive actual money without needing to do anything. Unlike a coupon settlement or a claims-made settlement, all funds should *actually be* paid to class members, without them having to take any additional steps, absent extraordinary circumstances. This is not always the case. The payment of actual money to class members without strings attached markedly increases the value of a settlement and further counsels in favor of approval.

The first *Ramey* factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers. *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 WL 6498956, 2020 U.S. Dist. LEXIS 207512, at *17–18 (S.D. Ohio Nov. 5, 2020). "The attorneys who take on class action cases enable this." *Id*. (citing *Moore v. Aerotek, Inc.*, 2017 WL 2838148, 2017 U.S. Dist. LEXIS 102621, *26–27 (S.D. Ohio June 30, 2017)). Society has a

stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* This factor supports the requested fee award.

Third, class counsel's services were provided on a contingency fee basis, which was known to the class. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required, *Arp*, 2020 WL 6498956, 2020 U.S. Dist. LEXIS 207512, at *18, it too supports the requested attorneys' fees award. Based on Class Counsel's summary of their time records, they worked a total of 355.7 hours on this case, for a total lodestar of $132,038. This results in a lodestar multiplier in this case of 3.79, which is well-within the reasonable range for this type of case. *See, e.g.*, *Id.* at *19 (approving a multiplier of 5.29); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, 2012 U.S. Dist. LEXIS 181476, at *5 (S.D. Ohio Dec. 21, 2012) (citing cases approving multipliers from 4.3 to 8.5 to be reasonable). "Given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis." *McConnell*, 2021 WL 1966062, 2021 U.S. Dist. LEXIS 92836, at *20 (internal capitalization altered). "This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate." *Id*.

Class Counsel's hourly rates have been approved as reasonable in numerous cases. *See, e.g.*, *McConnell*, 2021 WL 1966062, 2021 WL 1966062, 2021 U.S. Dist. LEXIS 92836, at *19 (approving hourly rates for Andy Biller at $600 per hour; Andrew Kimble at $550 per hour; Phil Krzeski at $350 per hour; and Erica Blankenship for $350 per hour); *Brandenburg*, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *17–18; *Arp*, 2020 WL 6498956, 2020 U.S. Dist. LEXIS 207512, at *19. A Court in the Southern District of Ohio has not yet evaluated Attorney Riley Kane's hourly rate, but his experience, particularly in this area of law, justifies a $250 per

10

hour rate. *See also Hawkins v. Middle Tenn. Pizza*, No. 3:21-cv-00266, 2022 U.S. Dist. LEXIS 21838 (M.D. Tenn. Jan. 19, 2022) (approving Riley Kane at $250 per hour).

Class Counsel's work will continue after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 WL 1966062, 2021 U.S. Dist. LEXIS 92836, at *19. This further supports a lodestar cross-check in this case.

In addition to the hours Class Counsel has worked on this pizza delivery driver case, Biller & Kimble, LLC has worked thousands of hours on pizza delivery driver cases throughout the country. Class Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, 2019 U.S. Dist. LEXIS 11019, at *14 (S.D. Ohio Jan. 17, 2019); *see also Brandenburg*, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *18–19 (discussing Biller & Kimble's expertise in this area). Here, Class Counsel's expertise in this niche area enhanced their representation here.

Finally, the Sixth Circuit has instructed that when "determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021) (internal punctuation altered). Following the Sixth Circuit's instruction and based on the factors discussed above, a detailed review is unnecessary here.

As a result, the Fourth factor supports the requested fee award.

Fifth, wage and hour class and collective actions are inherently complex. *Arledge,* 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474, at *5. This case involved novel and complex issues

11

of law that have been hotly contested throughout the country. This factor supports the requested fee award.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. As discussed above, Biller & Kimble, LLC are proven advocates for pizza delivery drivers. Counsel for Defendants, Michael Sandner of Pickrel Shaeffer, & Ebeling, is also a skilled and experienced employment litigator. This factor supports the requested fee award.

Based on the Court's preliminary approval, the absence of any objections from class members, and because all the *Ramey* factors support the requested fee award, the Court grants Class Counsel's request and awards $500,000 in attorney's fees.

### B. Requested Expenses

Class Counsel also asks that the Court award them an amount to reimburse them for their out-of-pocket litigation expenses. The expenses total $9,423 and are detailed in Class Counsel's Declaration. *See* Doc. 75-2. The Court finds that these expenses are reasonable and were necessary to advance the interests of the class. Accordingly, they are approved.

### C. Administration Costs

Class Counsel requests that the Court approve $13,712 in settlement administration costs. *See* Doc. 75-1. This amount is reasonable and advances the interests of the class, so it is approved.

### D. Incentive Award

The Court previously preliminarily approved Plaintiff Kirk Waters' request for a $10,000 service award subject to objection from class members. Doc. 73 at PageID 913. Following the distribution of notice, no class member objected. Accordingly, there is no reason to revisit the Court's prior finding. The requested incentive award is approved.

V.   **Conclusion**

Having scrutinized the settlement, considered the relevant factors, and conducted a fairness hearing, the Court finds that the class settlement in this case is the product of a bona-fide dispute, is fair, adequate, and reasonable, and was reached through arms-length negotiations. The Court approves the Settlement as agreed to by the Parties. The Court GRANTS Plaintiff's Motion for Final Settlement Approval. The Court will retain continuing jurisdiction to enforce the Settlement's terms. To that end, the Court:

(1) Grants final approval of the settlement;

(2) Approves Class Counsel's request for an award of attorney's fees of $500,000 and costs of $9,423;

(3) Approves Class Counsel's request for an award of the administrator's fees of $13,712;

(4) Approves Plaintiff's requested $10,000 incentive award;

(5) Orders the parties to otherwise carry out the settlement agreement according to its terms;

(6) Dismisses this action with prejudice.

IT IS SO ORDERED, this 1st day of August 2022.

*s/Thomas M. Rose*
_____
Thomas M. Rose, United States District Judge